IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TOUSSAINT L'OUVERTURE MINETT, SR.,

                          Plaintiff,

      v.

STEPHEN KRUTER,

                          Defendant.

OPINION AND ORDER

19-cv-135-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Toussaint Minett, Sr., who is incarcerated at Dodge Correctional Institution, is proceeding on a claim that defendant Stephen Kruter violated his constitutional rights by shining a bright light in plaintiff's eyes at the Rock County jail, even though defendant knew that it aggravated plaintiff's serious eye condition, and by refusing to get plaintiff medical attention when he requested it. (I have amended the caption to reflect defendant's full name.) Before the court is defendant's motion for summary judgment. Dkt. #15.

      For the reasons below, I conclude that plaintiff has failed to produce sufficient evidence to establish the key elements of his constitutional claim and that defendant is entitled to qualified immunity with respect to that claim.

      As an initial matter, I note that even though the court gave plaintiff additional time to respond to defendant's motion, dkt. #24, he has filed only an unsworn response to defendant's proposed findings of fact in which he cites his unsworn complaint. Plaintiff did not file a brief in opposition to defendant's motion or a sworn statement regarding his

1

version of the events, and he did not propose any facts of his own in support of his claim. Defendant is correct that plaintiff has not complied with Rule 56 of the Federal Rules of Civil Procedure or this court's summary judgment procedures by supporting his responses to defendant's proposed findings of fact with admissible evidence. However, for the purposes of resolving defendant's motion for summary judgment, I will consider plaintiff's responses to the extent that they appear to be based on his personal knowledge.

From defendant's proposed findings of fact and plaintiff's responses to them, I find the following facts to be undisputed unless otherwise noted.

## UNDISPUTED FACTS

On December 9, 2018, plaintiff Toussaint Minett was booked into the Rock County jail, where defendant Stephen Kreuter has been employed as a correctional officer for over two years. On or about December 10, 2018, medical staff completed a questionnaire regarding plaintiff's medical history. Plaintiff did not report any medical problems relating to his eyes, except that he wore glasses. On January 22, 2019, plaintiff complained about a severe headache and neck pain. He was seen by the medical staff for headaches due to neck pain and was given a three-day order for Tylenol.

On January 25, 2019, defendant was working second shift. In the jail, there is reflective glass between the cellblock area where inmates are housed and the officer station. The reflective glass prevents inmates from readily seeing outside of the cellblock and dayroom area but allows correctional officers to see into the cellblock and dayroom. Because

inmates occasionally press their faces against the reflective glass in an attempt to see what is going on in the officer station, correctional officers sometimes use a flashlight on those inmates to alert them to stop pressing against the glass.

At approximately 5:00 p.m. on January 25, 2019, defendant observed two inmates making noises and pressing their faces against the window in the cellblock where plaintiff was housed, but plaintiff was not one of those inmates. Defendant flashed his flashlight on the two inmates, who were approximately 10 to 12 feet away, in an effort to stop their disruptive behavior. (Defendant avers that he only flashed his light for approximately one to two seconds. Plaintiff alleges that defendant flashed his light five to six times for several seconds at a time.) Defendant was using a regular, battery-operated flashlight. At that time, plaintiff was watching television with his right side facing the window. (The parties dispute where plaintiff was located when the light came through the window. Defendant avers that plaintiff was 10 to 15 feet behind the two inmates, meaning that he was approximately 20 to 27 feet away from where defendant was standing when he used his flashlight. Plaintiff alleges that he was standing in between the two inmates and defendant, making him closer to defendant than the two inmates.) Defendant did not direct the flashlight toward plaintiff because plaintiff was not one of the inmates who was pressing his face against the reflective glass.

Plaintiff went to the cellblock door to tell defendant that he was having headaches and did not like the light and that it flashed into his eyes. (Defendant avers that plaintiff told him that the headaches were from a previous gunshot wound and not from the

flashlight. Plaintiff says that he told defendant that the flashlight beam was hurting his eyes because he had a macular hole in the back of his eye because of seizures caused by a gunshot wound to the head.) Defendant responded to plaintiff that he was not aware of plaintiff's medical condition and that he never directed the light on plaintiff. When plaintiff expressed his intent to complain about the incident (either by filing a grievance or filing a lawsuit), defendant told plaintiff that he could fill out an inmate request slip, grievance or request for medical care if plaintiff believed that any medical treatment was necessary.

After plaintiff spoke with him, defendant was careful about using his flashlight and did not shine it on or in close proximity to plaintiff after the initial incident. (The parties disagree about whether defendant used his flashlight again that evening. Defendant avers that he did not use his flashlight in plaintiff's cellblock again because the two other inmates had stopped their behavior. Plaintiff says that he saw defendant's flashlight "streak across his eyes" several more times "within five minutes" after he told defendant about the pain that the flashlight was causing him. Plaintiff also refers to a later incident during which defendant allegedly used his flashlight around plaintiff in February 2019. The February incident is the subject of a separate complaint filed by plaintiff in case no. 19-cv-205-bbc. I have not considered the February incident because plaintiff did not include any allegations about it in his complaint in this case and has not yet been allowed to proceed on a claim related to it.)

When defendant spoke with plaintiff, plaintiff did not appear to be in pain, have any problems with his eyes or have trouble seeing. Based on his observations, defendant did not

believe that plaintiff was suffering from an emergency condition or that he was in need of immediate medical care from the nurse. (Plaintiff says that he told defendant that he needed to see the nurse because he had a throbbing headache and was seeing "white spots.") In any event, because plaintiff reported having some type of medical condition, defendant immediately contacted jail medical staff to inform them of what had occurred and his conversation with plaintiff. Defendant understood from medical staff that they would assess plaintiff and provide any necessary treatment. That evening, plaintiff submitted a request for medical care regarding the flashlight incident and spoke with a jail nurse. (Although defendant has proposed several findings of fact about plaintiff's interaction with medical staff and their opinions regarding the cause of his pain and headaches, I have not considered them because they appear to be based on inadmissible hearsay and are not relevant to whether defendant acted with objective unreasonableness.)

During his shift that evening and during subsequent shifts, defendant observed plaintiff playing cards, watching television and talking with other inmates. He did not observe plaintiff having any difficulty with walking, writing, watching television or seeing properly.

## OPINION

### A. Summary Judgment Standard

Summary judgment is appropriate only if defendant demonstrate with admissible evidence "that there is no genuine issue as to any material fact and [he] is entitled to

judgment as a matter of law." Federal Rule of Civil Procedure 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "material fact" is one identified by the substantive law as affecting the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Bunn v. Khoury Enterprises, Inc., 753 F.3d 676, 681 (7th Cir. 2014). A "genuine issue" exists with respect to a material fact when "the evidence is such that a reasonable jury could return a verdict for" plaintiff. Id. "On the other hand, where the factual record taken as a whole could not lead a rational trier of fact to find for [plaintiff], there is nothing for a jury to do." Bunn, 753 F.3d at 682 (citing Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In determining whether a genuine issue of material fact exists, the court views the record in the light most favorable to plaintiff. Anderson, 477 U.S. at 255.

### B. Constitutional Claim

In his complaint, plaintiff alleges that he made defendant aware of his serious eye condition and the effect the flashlight had on his eyes, but that defendant intentionally ignored his pleas, continued to shine the flashlight in plaintiff's eyes and refused to get plaintiff medical attention when plaintiff asked for it. It is undisputed that plaintiff was detained at the Rock County jail at the time the alleged events occurred. Defendant contends, and plaintiff does not dispute, that his claim is governed by the due process clause of the Fourteenth Amendment, which applies to pretrial detainees or individuals on a probation hold. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015); Miranda v. County of Lake, 900 F.3d 335, 353 (7th Cir. 2018).

The analysis of a Fourteenth Amendment due process challenge to a prison official's response to an inmate's serious medical need or substantial risk of serious harm proceeds in two steps. McCann v. Ogle County, 909 F.3d 881, 886 (7th Cir. 2018). The first step focuses on the intentionality of the individual defendant's conduct and "asks whether the . . . defendant[] acted purposefully, knowingly, or perhaps even recklessly when [he] considered the consequences of [his] handling of [plaintiff's] case." Id. (citing Miranda, 900 F.3d at 353). A showing of negligence or even gross negligence will not suffice. Id. At the second step, courts apply an "objective reasonableness" standard, focusing on the totality of facts and circumstances faced by defendant and gauging "objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." Id.

Plaintiff has failed to present any evidence that defendant acted purposefully, knowingly or even recklessly in using his flashlight on January 25, 2019. The undisputed facts show that defendant directed his flashlight at two disruptive inmates in plaintiff's cellblock where plaintiff happened to be watching television. Although the parties dispute where plaintiff was located in relation to the flashlight beam, it is undisputed that defendant was not targeting plaintiff and had no knowledge of his medical condition at that time. Plaintiff alleges that even after he told defendant about his eye problem, defendant continued to use a flashlight in plaintiff's vicinity and the flashlight's beam "streaked across his eyes." Defendant denies this conduct, but even if it was true, plaintiff fails to allege or present any evidence that defendant directed the light at plaintiff, knew that plaintiff was close by or otherwise targeted plaintiff. At most, defendant's further use of the flashlight was negligence or gross negligence. Finally, plaintiff does not dispute that defendant immediately

7

informed medical staff about the flashlight incident and plaintiff's reported eye problem and told plaintiff that he could request medical care. It also is also undisputed that plaintiff requested and received medical care that evening.

Considering the undisputed facts in this case, a reasonable jury would not conclude that defendant's conduct was objectively unreasonable. Accordingly, defendant is entitled to summary judgment with respect to plaintiff's due process claim against him.

In addition, defendant argues that even if plaintiff had shown that a reasonable jury could conclude that defendant's actions qualified as objective unreasonableness, he is entitled to qualified immunity. I agree. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). Qualified immunity is an affirmative defense, but the plaintiff carries the burden of defeating it once it is raised. Rabin v. Flynn, 725 F.3d 628, 632 (7th Cir. 2013). To defeat the qualified immunity defense, plaintiff must show that: (1) defendant violated a constitutional right; and (2) the right was clearly established at the time so that it would have been clear to a reasonable official that his or her conduct was unlawful in the situation. Saucier v. Katz, 533 U.S. 194, 201-02 (2001); Ewell v. Toney, 853 F.3d 911, 919 (7th Cir. 2017).

Plaintiff has not responded to defendant's qualified immunity argument or otherwise identified any legal authority indicating that a correctional officer violates the Fourteenth Amendment by shining a flashlight in a prisoner's eyes under circumstances similar to those

in this case. No reasonable officer with the same information would think that shining a flashlight in an area where plaintiff may be present, but not directing the light at plaintiff, was so obviously unreasonable or egregious that it would violate plaintiff's clearly established rights. Accordingly, defendant also is entitled to qualified immunity with respect to plaintiff's due process claim.

ORDER

IT IS ORDERED that defendant Officer Kruter's motion for summary judgment, dkt. #15, is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 15th day of April, 2020.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge